UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAR 25 P 1:08

U.S. DISTRICT COURT
BRIDGEPORT, CONN

THOMAS MOYSEY,

   Plaintiff,

  v.        CIVIL NO. 3:00cv2026 (AHN)

JOHN REARICK, TODD LYNCH,
MICHAEL COLLINS, JOHN
HERMAN, JR., JOSEPH DUNN,
and PAUL RENSHAW,

   Defendants.

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

  Plaintiff Thomas Moysey ("Moysey") has brought suit against Defendants Major John Rearick ("Rearick"), Sergeant Todd Lynch ("Lynch"), Sergeant Michael Collins ("Collins") and Lieutenant John Herman, Jr. ("Herman"), of the Connecticut State Police Department ("State Police") as well as Officers Joseph Dunn ("Dunn") and Paul Renshaw ("Renshaw") of the East Lyme Police Department ("East Lyme") (collectively, "Defendants"). Moysey claims that the State Police's decision to transfer him to a different troop (1) was in retaliation for exercising his right of free speech under the First Amendment; (2) denied him equal protection of the laws as guaranteed by the Fourteenth Amendment; and (3) constituted intentional infliction of emotional distress under Connecticut state law.

  Claiming qualified immunity, Defendants filed Motions for Summary Judgment [docs. #33, #36] pursuant to Fed. R. Civ. P. 56.

For the reasons set forth below, the motions are GRANTED in all respects.

## BACKGROUND

Based on the record submitted by the parties, the court finds that the following facts are undisputed:

In September 1997, Moysey was employed by the State Police as a Resident Trooper in East Lyme. As Resident Trooper, Moysey was responsible for overseeing East Lyme police officers and assuring compliance with State Police policies and procedures.

During his tenure, Moysey lodged oral and written complaints about the conduct of Dunn and Renshaw, who served at the time as the President and Vice President of the East Lyme Police Union, respectively. In particular, Moysey accused Dunn and Renshaw of violating workplace policies such as smoking on duty, exceeding the boundaries of the town, and not keeping regular work hours. See Moysey Deposition ("Moysey Dep.") at 216. In addition, Moysey cited specific examples of Dunn's alleged misconduct, such as behaving inappropriately during a domestic violence call and having personal meetings while on duty. See Moysey Dep. at 209-14.

On or about May 18, 1999, Dunn and Renshaw filed complaints with the State Police detailing incidents that occurred between Moysey and other East Lyme police officers and staff. The complaints, among others, accused Moysey of making statements

that were demeaning toward women, using the term "menstrual cycle" inappropriately at a morning roll call, and remarking that single mothers should not be police officers.

On or about May 20, 1999, the State Police initiated an internal investigation to examine these complaints. Sergeant Lynch, Moysey's direct supervisor, received the first complaints. Lieutenant Herman then initiated the investigation with Major Rearick's authorization. Sergeant Collins ran the investigation, which took approximately six months to complete. During the pendency of the investigation, Moysey was transferred from his Resident Trooper position in East Lyme to Troop E.

As the investigation progressed, eight more East Lyme employees submitted complaints against Moysey. These complaints involved similar allegations of improper workplace conduct, demeanor, and language. The State Police notified Moysey of the substance of each complaint, and ordered that he answer questions about the allegations. Moysey's factual accounts of these incidents were generally inconsistent with the accounts offered by the complaining East Lyme employees.

In an effort to resolve these complaints, Moysey entered into a Stipulation Agreement ("Agreement") on or about November 16, 1999, in which he stipulated to five violations of State Police policy regarding improper demeanor, attitude, and language. He denied, however, the alleged claims of sexual harassment and sex discrimination. As part of the Agreement,

Moysey accepted a voluntary transfer to Troop K of the State Police.

Moysey now complains that Defendants' decision to remove him as Resident Trooper violated his constitutional rights, even though he assented to the transfer. More specifically, Moysey asserts that Defendants' collective actions violated his rights of free speech and equal protection. For the reasons discussed below, the court finds that these claims are meritless and wholly unsupported by the summary judgment record.

## STANDARD

A motion for summary judgment may not be granted unless the court determines that there exists no issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), cert. denied, 480 U.S. 937 (1987). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The substantive law governing a particular case identifies those facts that are material with respect to a motion for summary judgment. See Anderson, 477 U.S. at 254. A court may grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ....'" Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted); see also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).

In considering a Rule 56 motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248; Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985)). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci,

923 F.2d 979, 982 (2d Cir.) (citing Anderson, 477 U.S. at 248), cert. denied, 502 U.S. 849 (1991).

## DISCUSSION

Based on the evidence contained in the summary judgment record, the court finds that Moysey's free speech and equal protection claims lack support in fact or law. Moreover, even if the claims were factually supported, the court would still find that Defendants are entitled to qualified immunity.

I.  Alleged Retaliation for Exercise of First Amendment Rights

    A.  Applicable Law

Moysey claims that Defendants illegally retaliated against him because he, as a public employee, exercised his right to free speech when he accused Dunn and Renshaw of violating workplace policies. To prevail on this type of First Amendment claim, Moysey must prove (1) that the speech in question was constitutionally protected; and (2) that the exercise of the protected speech was a substantial or motivating factor in the adverse employment action taken against him. See Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780 (2d Cir.), cert. denied, 502 U.S. 1013 (1991). If the plaintiff presents evidence satisfying these elements, the burden shifts to the defendant to prove by a preponderance of the evidence that the adverse

employment action would have been taken regardless of plaintiff's exercise of free speech. See id. at 780-81.

In this context, speech generally merits constitutional protection if it can "be fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983). A court determines whether the speech in question is a "matter of public concern" by examining the "content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48. Moreover, "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." Id. at 149. Rather, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, <u>a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior</u>." Id. at 147 (emphasis added).

B. <u>Analysis</u>

Moysey's free speech claim fails because he has not submitted evidence showing that the speech in question was a matter of public concern or a substantial factor in the State Police's decision to transfer him.

1. <u>Moysey's Complaints Against Dunn and Renshaw Do Not Constitute Public Speech</u>

Moysey's complaints against Dunn and Renshaw do not merit constitutional protection because they were not related to matters of public concern. Rather, these complaints involved questions of internal office policy such as whether Dunn and Renshaw were keeping proper work hours and smoking on duty. Moreover, there is no dispute that the State Police transferred Moysey only after it thoroughly investigated the allegations and after Moysey himself agreed to the transfer in writing. Thus, the court finds that based on these facts, it would be inappropriate here to revisit "the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." <u>Id.</u> Thus, Moysey's First Amendment fails as a matter of law.

2. <u>Moysey's Complaints Against Dunn and Renshaw Were Not a Substantial or Motivating Factor in His Employment Transfer</u>.

Next, the court finds that even if Moysey's statements did relate to a matter of public concern, his claim would still fail. Moysey has adduced no evidence that the speech at issue was a substantial and motivating factor in the State Police's decision to transfer him. On the contrary, the summary judgment record reveals that the State Police conducted a thorough investigation which uncovered several substantive reasons for his transfer, including complaints from eight East Lyme employees other than

8

Dunn and Renshaw. Moreover, by signing the Agreement, Moysey effectively acknowledged that the State Police had a legitimate basis for transferring him to a different troop. Consequently, the court finds that there was no connection between any purportedly protected speech and Moysey's troop transfer.

In sum, the court grants summary judgment to Defendants on Moysey's First Amendment claim as a matter of law.

II. Equal Protection Claim Based on "Class of One" Theory

A. Applicable Law

Moysey also claims that he was denied equal protection of the laws as guaranteed by the Fourteenth Amendment. The Equal Protection Clause requires that governmental entities treat all similarly situated people alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although equal protection claims generally involve discrimination against an individual who belongs to a protected class, the guarantee of equal protection may also extend to persons who allege no specific class membership, but are nonetheless subjected to invidious discrimination at the hands of government officials. See, e.g., LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980). The Supreme Court recently affirmed the validity of such claims — commonly referred to as "class of one" claims — in which "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no

9

rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). To prevail on a claim of selective enforcement, plaintiffs have been required to show (1) that they were treated differently from other similarly situated individuals; and (2) that such differential treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LaTrieste Rest. & Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994).

B.  Analysis

As with the First Amendment claim, Moysey has failed to provide evidence supporting the equal protection claim under a "class of one" theory.[1] More specifically, he has not discharged his burden under Village of Willowbrook to submit evidence showing that he was treated differently from other similarly situated individuals. Rather, he simply asks the court to compare his situation to that of two other State Police officers: a female Master Sergeant who improperly denied several troopers overtime, but was allowed to retain her position; and a male Resident Trooper accused of having improper sexual relations who

---

[1] Moysey is a white male and not a member of a protected class for purposes of equal-protection analysis in this case.

was relieved of his supervisory position pending an internal investigation.

These two examples, however, fall short of showing that Moysey was treated differently from those who were similarly situated. Unlike the female Master Sergeant, Moysey was the subject of far more serious complaints than the denial of overtime. In addition, the fate of the male Resident Trooper actually undercuts Moysey's claim because both troopers faced <u>similar</u> disciplinary action — that is, the loss of the Resident Trooper position — after being accused of improper behavior.[2] More importantly, unlike these two individuals, Moysey formally acknowledged his wrongdoing and his consent to the troop transfer in a written document.

Second, Moysey's equal protection claim fails because the State Police had a rational basis for its decision to transfer him. As discussed <u>supra</u>, after receiving numerous complaints about Moysey, the State Police conducted a thorough investigation.[3] Based on the investigation's findings, Moysey

---

[2] Moysey also contends that the length of the State Police's six-month investigation shows that he was treated differently from those similarly situated. However, he acknowledged at his deposition that these investigations often last longer than the standard three-month period. <u>See</u> Moysey Dep. at 229-30.

[3] In fact, Moysey admitted that the State Police was obligated to conduct such an investigation. <u>See</u> Moysey Dep. at 227-28.

11

and the State Police entered into an Agreement that sustained all disciplinary actions except the sexual harassment allegation. Moysey does not dispute that the State Police has a legitimate governmental interest in maintaining order in its ranks, and that he accepted the job transfer as part of the Agreement. Thus, Moysey's transfer not only bore a rational relationship to a legitimate governmental interest, but was also done with his explicit approval.

In sum, Moysey has failed to present evidence supporting any aspect of his equal protection claim. The court therefore grants summary judgment to Defendants on this claim.

III. Qualified Immunity

Next, even assuming that Moysey had provided evidence to support his civil rights claims, the court finds that Defendants would still be entitled to qualified immunity.[4] Qualified immunity shields governmental actors from liability as long as their conduct does not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citation omitted). When "the plaintiff's federal rights and the scope of the official's permissible conduct are clearly

---

[4] Dunn and Renshaw argue in the alternative that Connecticut state law entitles them to absolute immunity. Given its ruling that they are entitled to qualified immunity, the court declines to address the issue of absolute immunity.

established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Id. A right is "clearly established" if its contours are sufficiently clear so that a reasonable official would understand his conduct violated that right. See McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.").

The summary judgment record reveals that Defendants' conduct did not violate Moysey's right to free speech or equal protection. Under the facts of this case, it was "objectively reasonable" for Dunn and Renshaw to file complaints about Moysey's conduct, and for the State Police defendants to investigate these and other complaints. Thus, even assuming the record contained evidence that supported Moysey's claims, the court finds that Defendants would still be entitled to qualified immunity.

IV. Remaining State Law Claim

In light of its ruling on the claims for which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over Moysey's pendent state law claim for intentional infliction of emotional distress. See 28 U.S.C.

§ 1367(c)(3); <u>Spear v. Town of West Hartford</u>, 771 F. Supp. 521, 530 (D. Conn 1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendent state law claims on the basis of a federal question claim already disposed of . . . ."), <u>aff'd</u> 954 F.2d 63 (2d Cir.), <u>cert. denied</u>, 506 U.S. 819 (1992)). Accordingly, the court dismisses the pendent state law claim in its entirety.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED. The Clerk is instructed to enter judgment in favor of Defendants and close the file.

SO ORDERED this 25 day of March, 2004, at Bridgeport, Connecticut.

                                   _____
                                   Alan H. Nevas
                                   United States District Judge